D. E. MITCHELL *v.* BANK OF INDIANOLA ET AL.

[54 South. 87.]

1. CHANCERY COURT. *Jurisdiction. Trusts. Constitution* 1890, *section* 147. *Banks. Deposits. Agency.*

Constitution 1890, § 147, which provides that no decree in any chancery court in a civil cause shall be reversed on the ground of want of jurisdiction to render the decree from any error as to whether the cause was of equity or common law jurisdiction, has no application where the chancery court declined jurisdiction, it is only where the trial court erroneously assumes jurisdiction, that it applies.

2. BANKS. *Deposits. Trust. Chancery jurisdiction.*

Where money is deposited in a bank, to be held pending negotiations for the purchase of lands and to be returned to the depositor, if the title to the land should prove to be defective, a relation of trust is raised and gives the chancery court jurisdiction of a suit by the depositor to recover the money on its wrongful distribution by the bank to a third person after the conclusion of the negotiation for the purchase of the land.

3. Same.

The existence of a bare agency is not sufficient to give the chancery court jurisdiction, but it must be an agency coupled with some distinct duty on the part of the agent in relation to funds or some specific property.

4. Banks. *Depositors.* *Trusts.*

As between a bank and its general depositors there exists only the ordinary relation of debtor and creditor. But where a deposit is made in a bank in trust for a specific purpose, it is a trust fund and remains none the less so by being commingled with the general assets of the bank.

Appeal from the chancery court of Leflore county. Hon. M. E. Denton, Chancellor.

Bill by D. E. Mitchell against the Bank of Indianola et al. From a decree sustaining a demurrer and dismissing the bill, complainant appeals.

The facts are fully stated in the opinion of the court.

*Tim E. Cooper,* for appellant.

Counsel for the appellee are pleased to take one part of complainant's bill and to assert that the part they select is that, by virtue of which the Bank of Indianola is sought to be held liable. If the part selected was the only averment of the bill upon which it was sought to hold the bank and the other defendants, I should confidently submit that the admission by the demurrer of those particular averments was sufficient to uphold the jurisdiction of a court of equity.

But counsel cannot, by ignoring other material averments of the bill, take them out of the case. They form a part of the case, although ignored by counsel.

I again call the attention of the court to the averment of the bill, that the deposit was made in the Bank of Indianola to be held by it "as the agent and trustee of the complainant, to be returned to him if the contract with Shepherd should not be executed."

The whole argument of counsel is that the simple relation of debtor and creditor existed between the complainant and the Bank of Indianola. They blindly ignore the other averment of the bill showing that the fund was not a general deposit creating the simple relation of creditor and debtor between the complainant and the bank. There may be a debt due by an agent or trustee to the principal or *cestui que trust.*. If this fund had been sent to the Bank of Indianola with instructions to invest it in any certain sorts of securities and the remittance had been in the shape of a check which had to be cashed, as was the case here, I suppose counsel would contend that if the bank put the fund in such shape or even if the complainant put the fund in such shape that the particular bill of exchange or the particular bank notes which were recovered were not to be returned, that this fact dominated the situation and prevented a relation or trust from arising.

The mere mingling of a lot of dollars held in trust with other dollars does not affect the trust relation. If the trust fund is mingled with other funds of the trustee, on general deposit in a bank and checks drawn by the trustee on the general fund, the court of equity will hold that what remains of this commingled fund is a trust fund. *Knatchwell* v. *Hallett,* 13 Chan. Div. 695; *Pennell* v. *DeFell,* 4 D. E. G. M. G.

It is the debt arising in the trust relation and not the particular money whether exchanged or the original money is charged by the trust. *Van Allen* v. *The Bank,* 52 N. Y.; *Hauptman* v. *The Bank,* 83 Hun 78; *Roca* v. *Byrne,* 145 N. Y. 182.

In one of these cases the court said if an agent or trustee had one hundred dollars in one pocket which belonged to the trust fund and spent that and took another one hundred dollars out of another pocket and deposited it in the bank, that the trust was not thereby discharged.

Just how the appellee is to admit that it received the fund "to be held by it as the agent and trustee of the complainant to be returned to him if the contract with Shepherd should not be executed" and then to contend that it was a simple debtor to the complainant, I confess I do not understand, and since counsel for the appellee have not in their brief suggested how this proposition is to be worked out, I leave the matter for the cogitation of the court.

I do not think I have misstated either the position assumed by the chancellor nor the contention of counsel; in fact, I have stated counsel's contention distinctly, as they put it themselves, for I have said in my original brief that "their contention was that there never was a trust relation between the complainant and the bank; that the complainant never had any other than a purely legal demand enforcible in a court of law and there never was a time when he might have invoked the jurisdiction of the court of equity."

If this is not the contention of the appellee in the brief they have filed, I admit that I do not know for what proposition they do contend.

Counsel for the appellee are also unfortunate in their reply to my second proposition, to-wit: that even if it be conceded that complainant's demand was purely of a legal nature, a court of equity would have jurisdiction to avoid multiplicity of suits, for which proposition I cited a recent decision of this court directly in point. *Tisdale* v. *Insurance Company,* 84 Miss. 709.

Now the court will observe how, with a slight twist, this contention is sought to be diverted and its whole nature changed. Counsel correctly quoted from my brief the position which I advanced, which was that "each of the defendants who have received that money is liable to complainant in an action at law."

I never did assert that the complainant could sue the defendants other than the Bank of Indianola in one joint

action, and clearly he could not. I said in my original brief, that "the other defendants are liable because each of them has a part of that fund." I did not think it necessary to go on and say that the bank could sue Mr. Gardner and recover from him so much of the trust fund as he had taken to himself and that it could sue Mrs. Gardner to recover so much of the trust fund as had been distributed to her, and that it could sue Mrs. Pitts and recover so much of the trust fund as had been distributed to her, and that it could sue Mr. Pollard and recover so much of the trust as had been distributed to him, and that it could sue Mr. Hamner and recover so much of the trust fund as had been distributed to him. I did state that each of the defendants was liable, and so I yet contend, but I never did claim that the complainant could bring one action against all the defendants jointly, and it is clear that he could not.

Suppose Mrs. Pitts had only gotten five hundred dollars of the ten thousand dollars trust fund. It is clear that her liability would have been the amount she got and not the amount of the fund from which the money she got was derived.

Counsel are mistaken in saying that I ever argued that having a right of action at law against all the defendants, I had a right to institute this suit to prevent a multiplicity of suits. What I did say was, that having rights of action against each of the defendants and the liability of each defendant depending upon precisely the same state of facts and of law, that under the decision of this court in the Tisdale case, the jurisdiction of equity was clear to prevent a multiplicity of suits. Unless the Tisdale case is to be overruled or can be distinguished from the present case, I am unable to see why it does not control.

The proposition for which counsel contends—that a mere deposit in the bank without more creates a relation of debtor and creditor, but where there is a special

agreement under which the deposit is made, that of course, controls unless the bank, simply because it is a bank, is to be exempt from the ordinary rules, which control contracts between individuals.

Counsel for the appellee refer to the case of *Cooper v. The Bank* and what is shown by the facts in that case. I am entirely willing for the court to take that record as disclosing the full facts under which this deposit was made. From that record it appears that Pitts, the cashier of the bank, and H. C. Williamson were the agents of Shepherd and others for the sale of the lands. The complainant was required to deposit a certain sum as a guarantee that he would carry out the contract of purchase, if made. This fund was to be deposited with the Bank of Indianola. There was nothing to suggest that it was to be a general deposit. The thing that was sent down was a certified check and the Bank of Indianola might have held that as well as the cash. This check was made payable to Williamson and he, instead of sending the check to the Bank of Indianola, indorsed it over to the Union and Planters Bank and it is true that the Bank of Indianola used this fund, but there is not a line in the whole record to show that the complainant ever assented to such use.

When the trade with Shepherd fell through, Williamson wanted to return this fund to Mitchell, but the Bank of Indianola expressly claimed that it was a deposit for the benefit of Shepherd and that they would not give it up, because, as the cashier wrote, he intended to hold the fund for the benefit of Shepherd. He was willing enough to give it up when he had the opportunity to get up as a forfeit for the sale of the lands in which his wife had an interest and in which the president of the bank and his wife had an interest.

*Percy, Moody & Percy,* for appellee.

Counsel for appellant in a very adroit and ingenious manner attempts to place us in the position of contending that, where money of any description is deposited in a bank and the identical gold, silver or bank bills which were deposited are to be returned to the depositor upon certain conditions, and not its equivalent, it would not constitute a trust cognizable in a court of equity. In so doing, however, he does not state our position correctly. If the bill in this case charged, and the fact was, that a certain specific sum of money was deposited with the Bank of Indianola for a certain specific purpose, and if that purpose failed and that the identical money so deposited, and not its equivalent, should have been returned to appellant, but that the bank in violation of its trust delivered this specific money without the authority of the appellant to the other appellees, the demurrer in this case would never have been interposed. If the premises of appellant were sound, we would admit that his conclusion is correct, but we deny that his premises are sound. Our contention in the court below was that there never was a trust relation between the complainant and the bank. That the complainant never had any other right than a purely legal demand enforcible in a court of law, and there never was a time when he might have invoked the jurisdiction of a court of equity. That the deposit, which was made in the bank, was a general deposit and not a special deposit. True it is that the sum deposited was to be repaid to the complainant if the title proved not to be good, but it is equally true that the specific money so deposited was not to be redelivered to the complainant. It is equally true that the bank attempted to pay to the other appellees, at the instigation of Prine, the amount of money which had been by the appellant deposited with it, but it is also true that the specific money, which had been by the appellant

deposited with the bank, was not paid to the other appellees. Our contention, therefore, was that, on the facts stated in the bill, the relation of creditor and debtor was created between the appellant and the bank, and that as the particular fund, which had been deposited, was not by the bank turned over to the other appellees, no right to proceed against them, either at law or in equity, was in the appellant. We stated that if it appeared that the bank was insolvent, the appellant might have the right to proceed against Gardner and his associates on the theory that they had received money from the bank to which they were not entitled, and not being entitled to it, were debtors to the bank in the amount so received, and that such indebtedness constituted an asset of the bank which the appellant might, if the bank was insolvent, have proceeded against. This, however, the appellant could only do if the bank was insolvent, which the bill did not charge. Of course, we would not have contended that, if the identical fund, which was deposited, had been paid over to Gardner and his associates, the appellant could not have proceeded against them to recover this fund.

"A deposit with a bank will always be deemed to be general, unless made special by contract." 3rd Amer. and Eng. Ency. of Law, second Ed., page 828, and cases cited in note 6.

"The relation between the bank and a general depositor is not that of agent and principal, or of trustee and *cestui que trust*, but is merely that of debtor and creditor. Unless there are stipulations to the contrary, such deposits belong to the bank, become part of its general funds, and can be loaned or otherwise used by it as their money." 3rd Amer. and Eng. Ency. of Law, second Ed., page 826 and numerous cases cited.

"When money of any description is deposited in a bank, and the identical gold, or silver or bank bills deposited are to be returned to the depositor, the deposit

is special. It is then the duty of the bank to safely keep and return the identical money.''

''When money is deposited in a bank without any understanding that the identical money shall be returned, but that a like amount of lawful money shall be repaid, the deposit is general, and the bank is permitted to use the money in its business, and the relation of debtor and creditor is created by the transaction.'' *Mutual Accident Ass'n* v. *Jacobs*, 33 Amer. Sta. Rep., page 302; special attention is called to this case, and cases cited therein.

Aside from the proposition that one's pleadings are construed most strongly against him, the law is as stated that ''A deposit (with a bank) will always be deemed to be general, unless made special by contract.''

The complainant in this bill does not charge that the deposit was special, and the fact is that it was not. This particular transaction was once before this court in the case of the *Bank of Indianola* v. *Tim E. Cooper et al.*, and in that case it clearly appeared, and the fact was, that the money was placed to the credit of the Bank of Indianola by Mitchell in the Union and Planters Bank, of Memphis, and the money, which was thus placed to its credit, was drawn out by the Bank of Indianola and used in the conduct of its business, and the fund, which was paid to Gardner and his associates, was not the money which had been placed to the bank's credit at the Union and Planters Bank.

Argued orally by *Tim E. Cooper*, for appellant, and *Edward Mayes*, for appellee.

ANDERSON, J., delivered the opinion of the court.

The appellant, D. E. Mitchell, filed his bill in the chancery court of Leflore county, against the appellees, the Bank of Indianola, A. F. Gardner, Mrs. J. E. Gardner, Mrs. M. L. Pitts, T. R. Henderson, W. M. Hamner, and R. V. Pollard, to which bill appellees demurred, which

demurrer was sustained, and bill dismissed, from which decree this appeal is prosecuted. The bill sets up substantially these facts: That appellant, Mitchell, on the 29th day of May, 1905, deposited with the appellee the Bank of Indianola, the sum of nine thousand five hundred dollars, to be held by such bank in trust for the following purpose: Appellant was negotiating with one Shepard and others for the purchase of certain lands owned by them, and in order to insure good faith on the part of appellant it was agreed between the parties that, pending the negotiations of purchase and the examination of the title to the lands, this money so deposited with the bank should be held by it, and in the event the title to the lands was found not to be good it should be returned to appellant; that on examination the title to the lands was not approved by appellant, and the negotiations ended, and he was entitled to have said money returned to him by the bank; that said sum of money so deposited was held by the bank as agent and trustee of appellant, "to be returned to him if the contract with Shepard and others should not be executed;" that on the 10th of June, 1905, one Prime, assuming to act as the agent of appellant, entered into another contract with the appellees, except the Bank of Indianola, for the purchase of lands owned by them, by the terms of which the nine thousand five hundred dollars so deposited in the Bank of Indianola by appellant was forfeited to the appellees, except said bank; that accordingly the Bank of Indianola, through its president, the appellee A. F. Gardner, distributed the said sum of money as forfeited to the appellees, except the bank. The prayer of the bill is for a decree against the bank for the whole amount of the nine thousand five hundred dollars, with interest, for a breach of trust, and against the appellee A. F. Gardner for the whole amount, with interest, on the ground that without authority he, as president of the bank, withdrew such funds from deposit and distributed

the same, and against each of the other appellees for the amount, with interest, so distributed to them.

It is contended for appellees (and the court below so held) that a court of equity is without jurisdiction of this cause; that the subject-matter of the suit is of exclusive legal cognizance. Section 147 of the Constitution of 1890 has no application, because the court below declined jurisdiction. It is only when the trial court erroneously assumes jurisdiction, that it applies. In our judgment, the reasoning of the supreme court of the United States, in *Clews* v. *Jamieson,* 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183, which is amply supported by authority, is unassailable, and conclusive of the question here involved for the appellant. We quote:

"It is undisputed that the defendants, the governing committee of the stock exchange, have in their hands the sum of fourteen thousand dollars, the absolute title to which they do not claim. That sum was deposited with them by Schwartz & Co. and Jamieson & Co., each depositing one-half, for the purpose of thereby securing the performance of the contract entered into by those parties, and which sum was only to be taken from the possession of the governing committee for the purpose of fulfilling the condition upon which its deposit with the committee was made. As that committee had no personal interest in or title to the fund, and it was placed in its possession in the trust and confidence that it would see that the purposes of the deposit were fulfilled and the moneys paid out only in accordance with the terms of the trust under which it was deposited, there can be no question that the fund thereby became a trust fund in the possession of the governing committee, and the disposition of which in accordance with the trust those members were called upon to secure. The complainants claim that, pursuant to the conditions of the trust, they were entitled to the money deposited with the committee. It is shown that the money deposited by Schwartz & Co.

was deposited by them for and in behalf of the complainants, and Schwartz & Co. lay no claim to the fund or any portion of it. Complainants demanded from the committee the payment of the whole fund to them, on the ground that they were entitled to such payment by the terms of the trust, and because of the violation of the contract by Jamieson & Co., to secure which the latter deposited seven thousand dollars of the fund in question. The committee has refused to pay over any portion of this sum to complainants, although it lays no claim to it, or any portion of it, on its own behalf. There is a dispute in regard to the right of the complainants to any portion of this fund, and a refusal on the part of the committee to pay it over to them. By reason of the facts, the committee occupied, from the time of the deposit of the funds, a fiduciary relation towards the parties depositing it, and it became a trustee of the fund, charged with the duty of seeing that it was applied in conformity with the provisions creating it.

"Pomeroy, in his work on Equity Jurisprudence, second edition, instances, among other equitable estates and interests which come within the jurisdiction of a court of equity, those of trusts. In volume 1, at section 151, he says: "The whole system fell within the exclusive jurisdiction of chancery. The doctrine of trust became and continues to be the most efficient instrument in the hands of a chancellor for maintaining justice, good faith, and good conscience; and it has been extended so as to embrace, not only lands, but chattels, funds of every kind, things in action, and moneys.' All possible trusts, whether express or implied, are within the jurisdiction of the chancellor. In this case the committee, as trustee, was charged with the performance of some active and substantial duty in respect to the management and payment of the funds in its hands and it was its duty to see that the objects of its creation were properly accomplished. The fact that the relief demanded is a re-

covery of money only is not important in deciding the question as to the jurisdiction of equity. The remedies which such a court may give 'depend upon the nature and object of the trust. Sometimes they are specific in their character, and of a kind which the law courts cannot administer; but often they are of the same general kind as those obtained in legal actions, being mere recoveries of money. A court of equity will always, by its decree, declare the rights, interest, or estate of the *cestui que trust,* and will compel the trustee to do all the specific acts required of him by the terms of the trust. It often happens that the final relief to be obtained by the *cestui que trust* consists in the recovery of money. This remedy the courts of equity will always decree when necessary, whether it is confined to the payment of a single specific sum or involves an accounting by the trustee for all that he has done in pursuance of the trust, and the distribution of the trust moneys among all the beneficiaries who are entitled to share therein.' 1 Pom. Eq. Jur., § 158.

"In cases where the equity doctrine of trusts has been extended so as to embrace other relations of a fiduciary kind, while it may not be said that a court of equity possesses exclusive jurisdiction, yet it is well settled that in such case there is so much of the trust character between the parties so situated that the jurisdiction of equity, though not exclusive, is acknowledged. 1 Pom. Eq. Jur., § 157. . . . In *Marvin* v. *Brooks,* 94 N. Y. 71, it was held that an agent who had been intrusted with his principal's money to be expended for a specific purpose might be required to account in equity, and that upon such an accounting the burden was upon him to show that his trust duties had been performed and the manner of their performance. The jurisdiction was placed upon the ground of a fiduciary or trust relation, and it was held that a court of equity had jurisdiction over trusts and those fiduciary relations which partake of that char-

acter, and in such cases the right to an accounting is well established; but it was held that the existence of a bare agency was not sufficient. It must be an agency coupled with some distinct duty on the part of the agent in relation to funds or some specific property. In 2 Story's Eq. Jur. (12th Ed.) at section 975a, it is stated, that in general a trustee is suable in equity in regard to any matters touching the trust. In *Oelrichs* v. *Spain*, 15 Wall. 211, 228, *sub nom.* *Oelrichs* v. *Williams*, 21 L. Ed. 43, 44, the court remarked that, there being an element of trust in the case, that element, wherever it exists, always confers jurisdiction in equity. . . . The maintenance of this suit enables the whole question between all the parties to be determined therein, and prevents the necessity of any action at law or other proceeding in the courts for the purpose of determining the ultimate and final rights of all the parties to this suit. Such relief cannot be obtained in any one action at law.''

It is true, as contended, that as between a bank and its general depositors there exists only the ordinary relation of debtor and creditor. But that is not this case. This fund was deposited with the bank in trust for a specific purpose, viz., to be returned to appellant if the title to the lands was found not to be good. And the fact (if it be true) that the fund was commingled with the general assets of the bank would make it none the less a trust fund.                    *Reversed and remanded.*