JOHNSON, STATE BANK EXAMINER, *v.* JOHNSON.

(Division B.    March 24, 1924.)

[99 So. 369.    No. 23920.]

BANKS AND BANKING.    *Special deposits not otherwise secured guaranteed under Guaranty Act.*

Under section 3596, Hemingway's Code (Laws of 1916, chapter 207, section 38), providing that "all deposits not otherwise secured and all cashier's checks, certified checks or sight exchange issued by banks operating under this law shall be guaranteed by this act. The guaranty as provided for in this act shall not apply to a bank's obligation as indorser upon bills rediscounted, nor to bills payable, nor to money borrowed from its correspondents or others, nor to deposits bearing a greater rate of interest than four per cent. per annum"—a special deposit of money, or money paid to the bank for the specific purpose of paying a note made payable at the bank by its terms, is guaranteed under the act, and such person so paying the money for such purpose is entitled to a certificate of guaranty where the bank is being liquidated by the state bank examiners.

APPEAL from chancery court of Coahoma county.

HON. G. E. WLLIAMS, Chancellor.

Suit by J. H. Johnson against C. T. Johnson, State Bank Examiner in charge of the Delta Bank & Trust Company of Clarksdale. From a judgment for plaintiff, defendant appeals. Affirmed.

*Flowers & Brown,* for appellant.

We, of course, make no contention here that Mr. Johnson has not a valid claim against the Delta Bank and

Trust Company in liquidation. We deny, however, that he is in the attitude of a depositor. He went to the bank to pay his note, and not to make a deposit. He did not at least make a contract of deposit but merely took a receipt for the money from the bank to be applied in satisfaction of his note. It was not a deposit contract. The money he turned over to the bank was entirely released by him, it having been received by the bank to pay his note. Mr. Johnson retained no dominion over it. It was not money that he could withdraw. It was gone as far as he was concerned. It was accepted by the bank in payment of the note. It was not received by the bank as a deposit in favor of Johnson.

While this appellee's equities may be just as strong as the equity of a depositor, yet the question is whether he made a contract of deposit, or some other kind of contract. One thing is certain and that is that Mr. Johnson did not consider at the time that he was making a deposit. If this had been his purpose he would have taken a deposit slip for the amount. He would have retained the right to direct the disposition of the money. But he turned this money over to the bank to satisfy his note and for no other purpose, and did not expect ever to see or use the money again. It was not deposited in the bank for the purpose of providing a fund with which to pay his note but was delivered to the bank in payment of the note.

A general deposit is the payment of money into a bank to be repaid on demand, in whole or in part, as called for in current money. The obligation of the bank is to pay on demand or check of the depositor. The manner of receiving and evidencing deposits is well understood. A deposit slip is filled out, either by the depositor or by the bank. This slip evidences the deposit of the money, the creation of a deposit arrangement. The law takes care of the rest.

Mr. Johnson took no deposit slip. He did not under-

take to make a special deposit even.   The delivery of the money was made and taken as payment.

*Maynard, FitzGerald & Venable,* for appellee.

Was the money paid by J. H. Johnson a deposit?   And was it such a deposit as would entitle him to a guarantee certificate under section 3596, of the Code.   Anciently, the banking business consisted altogether of acting as bailees for things of value left with the banker, the identical things to be returned *in specie.*   In other words, anciently, all deposits were specific.   Still later, bankers began to loan by discounting bills and notes, or on mortgage, pawn or other security.   A still later period saw the issuance of notes of the bank intended to circulate as money instead of gold and silver.   *Oulton* v. *Savings Institution,* 17 Wall. 109-118 (21 L. Ed. 618) ; Mr. Morse, Volume 1, page 5, ''Banks and Banking.''

Where money is placed in the bank under instructions that it shall be used for a special purpose, is the money so placed a deposit?   It has been so thought.   Mr. Morse on ''Banks and Banking,'' chapter 13 of his fifth edition, divides deposits into three kinds : a general deposit, where the money deposited goes into the funds of the bank and title thereto is vested in the bank, the relation of debtor and creditor being established; a special deposit, where the whole contract is that the identical thing deposited shall be kept safely and returned to the depositor ; and, third, what he designates as a specific deposit, which he defines as money deposited to pay a specific check drawn, or to be drawn.

An examination of the cases, as well as the standard authorities shows beyond peradventure of doubt that where money is placed in the bank, the bank taking title to the money, whether it is a general deposit subject to check, or whether it is placed with the bank impressed with a special duty on the part of the bank to utilize an equal amount of money according to the direction of the

person placing it there, the money so placed is uniformly called and treated as a "deposit." The authorities hold that in such a situation as here is presented, the title to the money paid by J. H. Johnson became vested in the Delta Bank and Trust Company, impressed with a trust, it is true, but still the Delta Bank and Trust Company was not acting merely as an agent for the payment of the note in St. Louis. The fact that it gave a receipt reciting that the note was paid in full as between it and J. H. Johnson is conclusive that it intended to take title to the deposit and is conclusive against the possible suggestion that it was simply to act as the agent of J. H. Johnson to transmit his money to the bank in St. Louis in payment of the note.

In the second place, the contract and relation of the parties was not such that J. H. Johnson intended to enter into the relationship of debtor and creditor generally but intended to occupy this relationship with respect to the particular money placed in the bank; it being placed there pursuant to the general performance of banking functions. Of course the relation of debtor and creditor exists between a bank and its depositors as well as between the bank and its general creditors. The difference between the two, as we apprehend, is that when money is placed in the bank to be dealt with according to what is generally considered banking functions, the one who places the money there is a depositor; whereas where money is loaned to a bank, or services rendered to a bank, as any person would loan money to another person, the relationship of general creditor exists.

As we deduce it, what determines whether a sum of money placed with a bank is a deposit or not depends upon whether the bank takes the money to deal with it according to banking functions. The next inquiry is whether or not this deposit is covered by section 3596, Hemingway's Code, providing that all deposits, not otherwise secured, and all cashier's checks, certified checks, or sight exchange, issued by banks operating

under this law shall be guaranteed by this act, providing, however, that the guarantee as provided for should not apply to a bank's obligation as endorser upon bills rediscounted, nor to bills payable, nor to money borrowed from its correspondent, or others; nor to deposits bearing a greater rate of interest than four per cent per year. It is obvious that the words "all deposits not otherwise secured" are comprehensive enough to cover deposits of every kind and character.

True enough, no deposit slip was made out, and the money was not to be paid on demand. But we are not contending that the money placed in the bank was a general deposit. However, it does not follow that the money was not on deposit at all. What appellant makes the *indicia* of a deposit applies only to general deposits subject to check, and has no application to deposits placed in the bank for special purposes.

Does the fund placed by J. H. Johnson in the Delta Bank and Trust Company constitute a trust fund? If it does, it is entitled to priority. If it does not, it is not, as we understand the rule. This court has passed on a question of when deposits are trust funds in several cases. *Alexander Co. National Bank* v. *Conner*, 110 Miss. 653; *Kinney* v. *Paine*, 68 Miss. 259; *Ryan* v. *Paine*, 66 Miss. 678; *Billingsley* v. *Pollock*, 69 Miss. 759; *Sawyers* v. *Conner*, 114 Miss. 363; *Mitchell* v. *Bank of Indianola*, 98 Miss. 658.

We take it that it is not seriously disputed, and will not be seriously disputed that when money is deposited with a bank to be applied to a certain purpose, which task the bank undertakes, that though the bank may take title to the deposit it is yet subject to a trust and becomes a trust fund. Cases in Mississippi, where this question has been involved, as we understand them, all proceed according to and affirm this doctrine. In this line of Mississippi cases, we take it, all of them agree and proceed upon the theory that money deposited in the bank for a special purpose constitutes a trust fund. Mr. Free-

man states the rule as follows, in the note to *Plano Mfg. Co.* v. *Auld*, 86 Am. St. Rep., 790.

In view of the foregoing, we respectfull submit to the court that J. H. Johnson is entitled to both a guarantee certificate, and a priority in his favor.

*Flowers & Brown*, for appellant in reply.

The argument made by appellee assumes that the relation of bank and depositor existed, and labors then to show that the deposit was of a particular nature. We are insisting that the relation of bank and depositor was never created. Counsel insist that this was a special deposit. But see section 153 (1) Vol. 2, of Michie.

It is one of the incidents of a special deposit that the depositor retains control over the thing deposited. He may recall it; may take it out of the bank. It is put there for safe-keeping. In fact every deposit is put in a bank for safe-keeping. This is the fundamental idea of a deposit in a bank. There must be the placing of money or other thing in a bank for safe-keeping. Our statute in section 38 of chapter 124, Laws of 1914, as amended by chapter 207, Laws of 1916, covers cashier's checks, certified checks, and sight exchange. These items would not be protected as deposits but for their particular enumeration. Here Johnson simply paid his money to the bank, not as a deposit, but to pay his note knowing at the time the note was not there. He simply used the bank as his agent to transmit this money to the St. Louis bank which held his note. He had no thought of making a deposit. It was no more a deposit than if he had used his merchant as his agent instead of the bank.

Counsel for appellee do not cite authorities to illustrate the difference between the deposit relation and other relations. It is assumed that wherever money is received by a bank it is a deposit, and that the only question left open for discussion, in order to settle the rights of the parties, is—What kind of deposit is it? The brief filed by appellee proceeds on this assumption.

The quotations copied by counsel from the note of Mr. Freeman, in 86 Am. St. Rep., are misleading unless the court keeps in mind that Mr. Freeman is not in that note undertaking to show what is, and what is not a deposit. The note deals with deposit relation, and other incidents, and assumes the existence of the relation.

It could not be held that the First National Bank of St. Louis was a depositor because it had never heard of the money being received by the Delta Bank and Trust Company. Mr. J. H. Johnson made no contract for himself as a depositor. See Michie on "Banks and Banking," Vol. 2, page 897. The minds of the parties did not meet on a deposit arrangement. The Delta Bank and Trust Company was simply and only the agent of Johnson to send the money and get the note. It could have been sued by Johnson as for a conversion, or for money had and received.

ETHRIDGE, J., delivered the opinion of the court.

J. H. Johnson, the appellee, filed his bill in the chancery court stating that the Delta Bank & Trust Company was a corporation under the laws of the state, carrying on a general banking business, and that it suspended operations on March 16, 1921, and was taken over for purposes of liquidation by the state board of bank examiners. He alleges that on the 30th day of June, 1920, petitioner executed a promissory note in favor of Skinner and Morris or bearer, in the sum of one thousand five hundred dollars payable on November 15, 1920, at the Delta Bank & Trust Company; that the said payee assigned the said note to the Johnson-Harlow Lumber Company, and that the said Delta Bank & Trust Company in turn, for value, delivered the said note to the First National Bank in St. Louis, Mo., in whose possession the note was on November 15, 1920. On November 15, 1920, the appellee, J. H. Johnson, paid to the Delta Bank & Trust Company the principal and interest of said note,

being the total sum of one thonsand five hundred fifty-five dollars; that he was advised at the time by the assistant cashier of the bank that the said note was not in the bank at that time, but had been placed as collateral security with the said First National Bank of St. Louis. The Delta Bank & Trust Company never remitted to the St. Louis Bank the money paid by Johnson on the note, but at the time of receiving the money delivered to Johnson the following receipt:

"Clarksdale, Miss., November 15, 1920.

"Received of J. H. Johnson, Clarksdale, Miss., one thousand five hundred fifty-five dollars in full payment of his note and interest due November 15, 1920, payable to the Delta Bank & Trust Company, Clarksdale, Miss.

"[Signed] DELTA BANK & TRUST CO.,

"By C. T. JOHNSON, Asst. Cashier."

Johnson and the First National Bank of St. Louis requested the issuance of a certificate of guaranty for the said amount paid the Delta Bank & Trust Company which the said bank examiners refused to issue. Whereupon this suit was brought in the chancery court and the above facts agreed to on the hearing. The chancellor issucd a decree ordering the bank examiners to issue and deliver the certificate in accordance with the prayer of the petition, and from this judgment the appellant appeals.

In the case of *Mitchell* v. *Bank of Indianola,* 98 Miss. 658, 54 So. 87, this court held that where a sum of money was placed in the bank for the purpose of paying for a piece of land which was at the time in the course of negotiation, and which the depositor had agreed to take if the title was marketable, but which deal was never consummated, the transaction constituted a special deposit, and that the depositor was entitled to the preference out of the proceeds of the bank therefor.

In the case of *Sawyers* v. *Conner,* 114 Miss. 363, 75 So. 131, L. R. A. 1918A, 61, Ann. Cas. 1918B, 388, it appears that Mrs. Sawyers made a deposit in First Natchez

Bank of five hundred fifty dollars, which was marked "special deposit," and the money was placed there for the purpose of paying a contractor for rebuilding or repairing a building. The bank failed, but it was held by the court that the money so placed contituted a special deposit. These two cases are, on their facts, very much like the case at bar. The money was placed here with the Delta Bank & Trust Company for the purpose of paying the note and was not in any sense a loan to the bank for the purposes of banking business, but was for the purpose of paying a specific claim, and constitutes a special deposit in said bank. The question then arises as to whether the Bank Guaranty Law applies to a special deposit.

The Guaranty Bank Deposit Act guarantees all deposits not otherwise secured which do not bear interest at a greater rate than four per cent. per annum, and guarantees cashier's checks. The language used in the Bank Deposit Act is: "All deposits not otherwise secured and all cashier's checks, certified checks or sight exchange issued by banks operating under this law shall be guaranteed by this act. The guaranty as provided for in this act shall not apply to a bank's obligation as indorser upon bills rediscounted, nor to bills payable, nor to money borrowed from its correspondents or others, nor to deposits bearing a greater rate of interest than four per cent. per annum." Hemingways Code, section 3596 (Laws 1916, chapter 207, section 38).

We see no reason why the act should not apply to a special deposit as well as a general deposit. The words "all deposits not otherwise secured" are comprehensive enough to cover this class of deposits. We are therefore of the opinion that the chancellor's holding is correct, and the judgment will be affirmed.

*Affirmed.*